COMMONWEALTH OF KENTUCKY
ALLEN CIRCUIT COURT
NO. 08-CI-00224

DENISE WALKER, as Administratrix of the                          PLAINTIFF
Estate of THOMAS BRIAN GERMANY,
Deceased, and as Next Friend of TAG, a Minor

**PLAINTIFF'S RESPONSES**
vs.                **TO DEFENDANTS' REQUESTS FOR**
**ADMISSIONS (AND INTERROGATORIES)**

DANNY DAVIS, etc., and
SAM CARTER, etc.                                               DEFENDANTS

* * * * * * * * * * * *

Comes the Plaintiff, Denise Walker, as Administratrix of the Estate of Thomas Brian

Germany, Deceased, and as next friend of TAG, a Minor, by counsel, and for her answers and

responses to the requests for admissions (and interrogatories) propounded by Defendants Danny

Davis and Sam Carter states as follows:

The following answers and responses are made solely for the purpose of this action.

Each is subject to all objections as to competence, relevance, materiality, propriety and

admissibility, and any and all other objections on grounds that would require the exclusion of

any statement contained herein if any request was asked of, or any statement contained herein

were made by, a witness present and testifying in court, all of which objections and grounds are

reserved and may be interposed at the time of trial.

Except for explicit facts admitted herein, no incidental or implied admissions are

intended hereby. The fact that the Plaintiff has answered or objected to any request or any part

thereof should not be taken as an admission that she accepts or admits the existence of any facts

set forth or assumed by such request or that such answer or objection constitutes admissible

- 1 -

evidence. The fact that the Plaintiff has not answered part or all of any request is not intended and shall not be construed to be a waiver of all of any part of any objection to any request propounded by the Defendants. To the extent any or all of the requests call for information which constitutes information or material prepared in anticipation of litigation or for trial or information or material covered by the work product doctrine or which constitutes information which is privileged by virtue of the attorney-client privilege, the Plaintiff objects to each and every such request and thus will not supply or render any information or material protected from discovery by virtue of the work product doctrine or attorney/client privilege.

The Plaintiff has not completed the investigation of the facts relating to this case, has not completed discovery in this action, and has not completed preparation for trial. The following answers and responses are given without prejudice to the production of the subsequently discovered facts or evidence, the presentation of facts or theories resulting from subsequently discovered evidence, reevaluation of the existing evidence or evaluation of existing evidence in light of newly discovered evidence.

**REQUEST FOR ADMISSION NO. 1**: Admit that Danny Davis was not under the influence of any opiate, marijuana or any other controlled substance during the pursuit of Thomas Brian Germany which occurred on the evening of March 22-23, 2008.

**RESPONSE.**       DENIED.

**INTERROGATORY NO. 1**: If you deny Request for Admission No. 1, state the factual basis for your denial and identify the person(s) who have knowledge of said facts, including their

address, telephone number and occupation. The person(s) identified should include any expert witnesses plaintiff intends to have testify at the trial of this matter.

**ANSWER.** The following facts give rise to the reasonable inference that Danny Davis was under the influence of marijuana during the pursuit of Brian Germany:

- GC/MS analysis of the blood sample obtained from Danny Davis approximately three hours after the pursuit revealed the presence of Delta-9 Carboxy THC metabolite in Danny Davis's blood.

- Approximately three hours after running over and killing Brian Germany, Danny Davis admitted to Kentucky State Police investigating officers Chad Smith and Cory Buckner that he was not going to pass a drug test.

- Danny Davis admitted to Kentucky State Police Sergeant Cory Buckner that he smoked marijuana prior to Brian's death.

- Danny Davis admitted to Sergeant Buckner that he had been using marijuana occasionally to relieve stress.

- Danny Davis admitted to Sam Carter that that he had smoked marijuana the morning before Brian's death.

- Danny Davis lied under oath during his deposition about his marijuana use by claiming that he last smoked marijuana two days before Brian's death.

- Danny Davis lied under oath during his deposition about his marijuana use by claiming that the marijuana he smoked before Brian's death was the only marijuana he had smoked since childhood.

- Danny Davis lied under oath during his deposition about his marijuana use by claiming that he found the marijuana he smoked before Brian's death in the back seat of his police cruiser.

- Danny Davis lied under oath during his deposition about his marijuana use by claiming that he was physically unable to smoke the marijuana he said he found in the back seat of his police cruiser.

- Danny Davis lied under oath during his deposition about his marijuana use by claiming that the drug test he failed when applying for a job as a bus driver for the Allen County Board of Education was inaccurate because he had only smoked marijuana on two occasions, once during childhood and once before Brian's death.

See also Answer to Interrogatory No. 3.

- 3 -

Additional fact witness are identified in the depositions of KSP Lt. John Clark, KSP Sgt. Cory Buckner, KSP Tpr. Brian Gann, KSP Tpr. Adam Morgan, Danny Davis and Sam Carter, and the KSP Toxicology and Death Investigation files, including KSP Trooper Chad Smith. No decision has yet been made as to expert witnesses the Plaintiff may call to testify at trial. The Plaintiff will disclose expert witnesses in accordance with any applicable scheduling orders and the applicable Rules of Civil Procedure.

**REQUEST FOR ADMISSION NO. 2**:  Admit that the blood sample drawn from Danny Davis on the evening of March 22-23, 2008, while at The Medical Center at Bowling Green is the blood of Danny Davis as confirmed by DNA testing performed by a laboratory of plaintiff's own choosing.

**RESPONSE.**          DENIED.  However, the Plaintiff ADMITS that the blood sample provided by the Kentucky State Police to Orchid Cellmark on January 20, 2009 originated from Danny Davis.

**INTERROGATORY NO. 2**:  If you deny Request for Admission No. 2, state the factual basis for your denial and identify the person(s) who have knowledge of said facts, including their address, telephone number and occupation. The person(s) identified should include any expert witnesses plaintiff intends to have testify at the trial of this matter.

**ANSWER.**    The Plaintiff was not present when the blood sample was drawn from Danny Davis on March 22, 2008 while at The Medical Center at Bowling Green and did not have custody or control of that sample at any time between March 22, 2008 and January 20, 2009, when the sample as received by Orchid Cellmark, and thus she is unable to admit or deny

- 4 -

whether the blood sample drawn from Danny Davis on March 22, 2008 is in fact the blood tested by Orchid Cellmark.  Further, the two KSP officers suggested by the toxicology documents as having placed the sample in the mail to the KSP Lab in Madisonville, Tpr. Brian Gann and Sgt. Cory Buckner, have both been deposed.  Neither those officers, nor anyone else to date, could identify who placed the sample in the mail or when it was placed in the mail, and thus no one has been able to verify the chain of custody or otherwise testify about the whereabouts, storage, condition and transport of the sample between the time it was drawn and placed in the mail.

See also the depositions of KSP Lt. John Clark and other persons identified in the KSP Toxicology and Death Investigation files, including KSP Trooper Chad Smith.  No decision has yet been made as to expert witnesses the Plaintiff may call to testify at trial.  The Plaintiff will disclose expert witnesses in accordance with any applicable scheduling orders and the applicable Rules of Civil Procedure.

**REQUEST FOR ADMISSION NO. 3**:  Admit that the blood sample drawn from Danny Davis on the evening of March 22-23, 2008 was tested by a laboratory of the plaintiff's own choosing and that the blood sample tested negative for the presence of any opiate, marijuana or any other controlled substance of any kind whatsoever.

**RESPONSE.**      DENIED.

**INTERROGATORY NO. 3**:  If you deny Request for Admission No. 3, state the factual basis for your denial and identify the person(s) who have knowledge of said facts, including their address, telephone number and occupation.  The person(s) identified should include any expert witnesses plaintiff intends to have testify at the trial of this matter.

- 5 -

**ANSWER.** The blood sample, as provided by the Kentucky State Police to NMS Labs on January 14, 2009, was tested by NMS Labs in January and March 2009. Immunoassay analysis of the sample in January 2009 did not reach the reporting limit for any of the drug types tested. GC/MS (gas chromatography/mass spectrometry) analysis of the sample in March 2009 revealed the presence of Delta-9 Carboxy THC metabolite.[1] A copy of NMS Labs' Supplemental Report dated March 18, 2009, incorporating the results of both the immunoassay and GC/MS analyses, is attached hereto as EXHIBIT 1.

Further, according to the chain of custody and other documents in KSP Toxicology File 08-W-01416, documents exchanged during discovery and deposition testimony, a blood sample was drawn from Danny Davis at 2:59 a.m. on March 22, 2008, approximately three hours after the death of Brian Germany. At some unknown time thereafter, the sample was apparently sent via U.S. mail from The Medical Center at Bowling Green to the KSP Lab in Madisonville, apparently without refrigeration, and received at 10:41 a.m. on March 26. However, to date no document or witness has identified who placed the blood sample in the mail, when it was placed in the mail or its condition before it was placed in the mail. Assuming for the sake of argument that the sample was immediately refrigerated upon receipt by the KSP Lab in Madisonville, it had been unrefrigerated for approximately 104 hours. At 12:11 p.m. on May 14, 2008, the sample was sent via U.S. mail from the KSP Lab in Madisonville to the KSP Central Lab in Frankfort, without refrigeration, and placed in cold storage at 3:51 p.m. on May 16. During this transfer the sample was unrefrigerated for approximately 52 hours. At 10:39 a.m. on January 13,

---

[1]    Delta-9-THC is the principal psychoactive ingredient of marijuana, a Schedule I controlled substance. Delta-9 Carboxy THC metabolite, also known as THC-COOH, is a non-psychoactive compound produced when the human body converts THC into a water soluble form. The presence of Delta-9 Carboxy THC in a person's blood does not conclusively prove that the person was or was not under the influence of marijuana at a given time. It does, however, demonstrate that the person had recently used marijuana.

2008, the sample was sent via Federal Express from the KSP Central Lab to NMS Labs in Willow Grove, Pennsylvania, without refrigeration, and received at 12:39 p.m. on January 14. During this transfer the sample was unrefrigerated for approximately 26 hours. Accordingly, and assuming for the sake of argument that the sample was properly refrigerated and preserved at all times at the KSP Lab in Madisonville and at the KSP Central Lab in Frankfort, other than during the abovesaid shippings, the sample was unrefrigerated for at least 182 hours, more than 7½ days, before it reached NMS Labs to be tested for the presence of THC or metabolites.

Further, the most accurate test for marijuana usage is from a urine sample taken at or near the time of the last marijuana use. For whatever reason, the Kentucky State Police did not obtain a urine sample from Danny Davis on March 22, 2008, even though he admitted to them that he had smoked marijuana less than twenty-four hours before Brian's death.[2]   Also for whatever reason, the standard KSP drug screen on blood does not test for THC or metabolites, and thus Danny Davis's blood was not tested by the Kentucky State Police for the presence of marijuana.[3]

Further, even under ideal circumstances, no drug screen is 100% accurate. The stability of a blood sample, and thus the presence of detectable THC and metabolites, deteriorates in improperly preserved or unrefrigerated blood samples. There is no test for assessing whether a blood sample allegedly demonstrating the presence of THC or metabolites has been properly preserved or whether that sample is otherwise a valid indicator of the actual amount of THC in

---

[2]   Because of Danny Davis's repeated dishonesty under oath about his marijuana use, the jury will not be required to accept his testimony about the exact time of his last use.

[3]   Danny Davis also admitted to Allen County Sheriff Sam Carter that he smoked marijuana prior to Brian's death, but Sheriff Carter took no steps to investigate any of the details of that drug use—such as asking his deputy basic and obvious law enforcement questions like "Where did you get marijuana?". Instead, and in spite of his deputy's admitted illegal drug use, Sheriff Carter wanted Danny Davis to return to work for him after his administrative leave time following the death of Brian Germany was completed. *See* Danny Davis dep., Vol. II, 02/02/09, pp. 181-83. This is in stark contrast to Sheriff Carter's admission that the people of Allen County "deserve to have deputies driving around who don't use drugs." Sam Carter dep., Vol. II., 12/11/08, p. 70.

the person's system at the time the blood was drawn.  The known facts regarding this sample

strongly suggest that it was not.

For the reasons set forth above, the results of the drug tests performed on the sample

cannot be said to be valid indicators of the amount of THC or metabolites in Danny Davis's

system at the time of the pursuit of Brian Germany, and thus cannot be said to be valid indicators

of whether and to what extent Danny Davis was under the influence of marijuana during the

pursuit.  A person can be affected by marijuana use even if the level of THC in their blood is

below the limit detectable by a drug test.[4]

As discussed in these discovery responses, the presence of THC metabolites in Danny

Davis's blood, his admissions to law enforcement and his employer, and his repeated dishonesty

about his marijuana use during his deposition testimony under oath raise a reasonable inference

that the blood sample taken on March 22, 2008, because of the serious preservation and chain of

---

[4]     The dangers of operating a motor vehicle after smoking even a small amount of marijuana, especially in a pursuit situation, are highlighted in the National Highway Transportation Safety Administration Drug and Human Performance Fact Sheet for marijuana.  That fact sheet, the result of deliberations of the International Consultative Panel on Drugs and Driving Impairment held in Seattle, Washington, states what every reasonable law enforcement officer surely already knows:

- Even low doses of marijuana impair cognitive and psychomotor tasks associated with driving. *The more difficult and unpredictable the driving task, the more likely marijuana will impair performance.*

- Marijuana produces alterations in motor behavior, perception, cognition and memory.

- Effects of marijuana include relaxed inhibitions, disorientation, altered time and space perception, lack of concentration, impaired memory, alterations in thought formation, and *panic reactions*.

- It is inadvisable to try and predict effects based on blood THC concentrations alone, and currently impossible to predict specific effects based on THC metabolite concentrations. *It is possible for a person to be affected by marijuana use with concentrations of THC in their blood below the limit of detection.*

*See* NATIONAL HIGHWAY TRANSPORTATION SAFETY ADMINISTRATION, DRUG AND HUMAN PERFORMANCE FACT SHEETS, Report No. DOT HS 809 725, Apr. 2004, pp. 7-12.  This report is available online at http://www.nhtsa.dot.gov/people/injury/research/job185drugs/drugs_web.pdf.

custody questions, is not a valid indicator of the amount of THC in Danny Davis's system. Notably, even if the testing had been valid, it would only have indicated the amount in his system at the time the blood was drawn, and not the amount in his system during the pursuit three hours earlier. Danny Davis's admissions and misrepresentations, and the presence of THC metabolites in a blood sample drawn three hours later, also raise a reasonable inference that he was under the influence of marijuana during the pursuit of Brian Germany.

No decision has yet been made as to expert witnesses the Plaintiff may call to testify at trial. The Plaintiff will disclose expert witnesses in accordance with any applicable scheduling orders and the applicable Rules of Civil Procedure.

Ross T Turner
6500 Glenridge Park Place, Suite 12
Louisville, Kentucky 40222
phone: 502.429.9303
fax:  502.429.9304

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the foregoing was served on the 18th day of March, 2009 by faxing and mailing same to:

Charles E. English, Jr.
ENGLISH, LUCAS, PRIEST & OWSLEY
P.O. Box 770
Bowling Green, Kentucky 42102-0770
fax: 270.782.7782
*Counsel for Defendants*

Ross T Turner

- 9 -



NMS Labs
3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900   Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, DABFT, DABCC-TC, Laboratory Director

CONFIDENTIAL

## Supplemental Report

Report Issued    03/18/2009 13:55

Last Report Issued    01/19/2009 12:01

M02273
Ross T. Turner, Attorney at Law
6500 Glenridge Park Place
Suite 12
Louisville, KY   40222

Patient Name DAVIS, DANNY
Patient ID 08-CI-00224
Chain 09008701
Age Not Given       Gender Not Given

Workorder      09008701

Received        01/14/2009 12:39

This analysis was performed under chain of custody after receipt at NMS Labs.  The chain of custody documentation is on file at NMS Labs.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) weeks from the date of this report; and generated data will be discarded five (5) years from the date of this report.

---

Sample ID 09008701-001
Matrix Blood
Patient Name DAVIS, DANNY
Patient ID 08-CI-00224
Container Type Black Top Tube

Collect Dt/Tm 03/22/2008
Source Not Given

Approx Vol/Weight 3.5 mL

Receipt Notes        None Entered

| Analysis and Comments | Result | Units | Reporting Limit | Notes |
|---|---|---|---|---|
| **0960B Cannabinoids Panel, Blood** | | | | |
| Analysis by Gas Chromatography/Mass Spectrometry (GC/MS) | | | | |
| Delta-9 THC | None Detected | ng/mL | 1.0 | |
| Synonym(s):    Active Ingredient of Marijuana | | | | |
| The concentrations in Blood are usually about one-half of Serum/Plasma concentrations. Usual peak levels in Serum for 1.75% or 3.55% THC marijuana cigarettes: 50 - 270 ng/mL at 6 to 9 minutes after beginning smoking, decreasing to less than 5 ng/mL by 2 hours. Passive inhalation: Up to 2 ng/mL. | | | | |
| Delta-9 Carboxy THC | Less than 5.0 | ng/mL | 5.0 | |
| Synonym(s):   Inactive Metabolite | | | | |

Results for sample 09008701-001 are continued on next page

EXHIBIT

tabbies

V. 36



NMS Labs

CONFIDENTIAL

3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900   Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, DABFT, DABCC-TC, Laboratory Director

Sample ID 09008701-001
Matrix Blood
Patient Name DAVIS, DANNY
Patient ID 08-CI-00224

Collect Dt/Tm 03/22/2008
Source Not Given

| Analysis and Comments | Result | Units | Reporting Limit | Notes |
|---|---|---|---|---|
| Usual peak levels in Serum for 1.75% or 3.55% THC marijuana cigarettes: 10 - 101 ng/mL about 32 to 240 minutes after beginning smoking, with a slow decline. Usually not detectable after passive inhalation. | | | | |
| 11-Hydroxy Delta-9 THC | None Detected | ng/mL | 5.) | |
| Synonym(s):   Active Metabolite | | | | |
| Usual peak levels: Less than 10% of THC levels after smoking. | | | | |

### 1864B Drug Screen I, Blood

Analysis by Enzyme-Linked Immunosorbent Assay
(ELISA)

| | | | | |
|---|---|---|---|---|
| Opiates | None Detected | ng/mL | 2() | |
| Cocaine / Metabolites | None Detected | ng/mL | 2() | |
| Benzodiazepines | None Detected | ng/mL | 10) | |
| Cannabinoids | None Detected | ng/mL | 1()' | |
| Amphetamines | None Detected | ng/mL | 2(· | |
| Barbiturates | None Detected | mcg/mL | 0.040 | |
| Methadone | None Detected | ng/mL | 2{ | |
| Phencyclidine | None Detected | ng/mL | 1( | |
| Propoxyphene | None Detected | ng/mL | 5(· | |

V 36