**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO.: 1:09CV-6-M**

**DENISE WALKER, as Administratrix of the**
**Estate of THOMAS BRIAN GERMANY,**
**Deceased, and as Next Friend of T.A.G., a minor**                                    **PLAINTIFF**

**v.**

**DANNY DAVIS, Allen County Deputy**
**Sheriff, in his Individual Capacity, and**
**SAM CARTER, Allen County Sheriff,**
**in his Individual and Official Capacities**                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion by the defendants, Danny Davis and Sam Carter, for summary judgment [DN 12]. Fully briefed, this motion is ripe for adjudication.

**I. SUMMARY JUDGMENT STANDARD**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

Thomas Brian Germany ("Germany"), after leading police on a five minute pursuit, was tragically killed after an Allen County Deputy Sheriff, Danny Davis ("Davis"), struck Germany's vehicle with his police cruiser. The plaintiff contends that Davis intentionally struck Germany's vehicle, and that doing so was objectively unreasonable. Although Davis does not dispute that his cruiser struck Germany's motorcycle, he does dispute many of the other facts as articulated by the plaintiff. The Court must therefore determine whether the plaintiff has presented sufficient evidence to establish genuine issues of fact, and if so, whether those issues of fact are material to her claims.

The pursuit began at approximately midnight on March 22, 2008, when Darren Tabor ("Tabor"), an officer for the Scottsville Police Department,[1] paced a motorcycle, later determined to be driven by Germany, traveling at approximately 70 miles per hour in a 55 mile per hour speed zone. When Tabor activated his lights and sirens, Germany refused to stop. Tabor began pursuing Germany at a safe distance. Davis,[2] who was also on duty that night, learned of the pursuit over his

---

[1] Scottsville is the county seat for Allen County and is one of only two law enforcement authorities based in Allen County; the other being the Allen County Sheriff's Department.

[2] The plaintiff argues that Davis was under the influence of marijuana at the time of the chase. However, the two tests that were performed on Davis's blood following the accident, and the plaintiff's own drug test, came back negative for the presence of drugs. Although the plaintiff's

police scanner. He began searching for Germany's vehicle in the Scottsville vicinity in order to back up Tabor. Davis, who was at the intersection of Highway 100 and Highway 31E, witnessed Germany coming towards him northbound on Highway 31E. Davis attempted to stop Germany's motorcycle by placing his cruiser in Germany's path. Instead of stopping, Germany maneuvered around Davis in the opposite lane of traffic. Tabor followed close behind. After making a U-turn, he caught up with Germany, and joined the chase.[3] At some point in the pursuit, Germany ran a red light. Davis took the lead while Tabor stopped at the red light to clear the intersection. While Davis was in pursuit, Germany never exceeded 60 miles per hour.

Eventually, the chase continued onto Highway 585 where Germany entered a field. Davis chased Germany into the field where mere seconds later he struck Germany's motorcycle with his cruiser,[4] causing Germany's body to be pinned under Davis's cruiser and dragged several feet to his death. It was later discovered that Germany's blood-alcohol level was in excess of the legal limit

---

own tests identified the presence of Delta-9 Carboxy THC in Davis's blood, this only demonstrates that a person had recently used marijuana, but does not conclusively prove that the person was under the influence of marijuana at the time in question.

[3]     According to Davis, he did not "join" the pursuit, but instead, he initiated his own pursuit of Germany only after he witnessed Germany driving in an erratic manner in the wrong lane of traffic, forcing a bystander off the road. Davis did not mention any other vehicles in his statement to the KSP investigators shortly after the accident. Furthermore, Tabor testified that there were no other vehicles on the road. There being a genuine issue of fact as to the presence of other vehicles on the road, the Court must accept the plaintiff's version of events.

[4]     The plaintiff argues that Davis's actions were intentional. Davis disputes this argument and maintains that he unintentionally struck Germany's motorcycle after Germany lost control and Davis was unable to stop in time to prevent the collision. There is evidence that tends to suggest that Germany may have lost control of his motorcycle. The field that Germany entered was soggy and Germany was intoxicated at the time of the incident. However, an accident reconstructionist for the KSP indicates that Germany's vehicle was upright and heading straight at the moment of contact. Furthermore, the plaintiff's expert opines that the physical evidence establishes that Davis intentionally struck Germany's motorcycle. There being a genuine issue of material fact, the Court must accept as true that Davis intentionally struck Germany's motorcycle.

and that Germany was driving on a suspended license.[5]

## III. DISCUSSION

The plaintiff asserts three claims against Davis in his individual capacity. First, if the jury believes that Davis struck Germany's motorcycle intentionally in order to seize him, the plaintiff argues that her claim is governed by the Fourth Amendment. Alternatively, if the jury believes that Davis struck Germany's motorcycle intentionally, but for some purpose other than to seize him, the plaintiff argues that her claim is governed by the Fourteenth Amendment. Third, if the jury believes that Davis accidentally struck Germany's motorcycle, the plaintiff argues that her claim is one of negligence under state tort law. Davis argues that he is entitled to summary judgment on each of these claims pursuant to qualified or official immunity.

The plaintiff asserts one claim against Sam Carter ("Carter"), the Allen County Sheriff, in his individual capacity–a state law negligence claim for his failure to enforce the department's written pursuit policy. Carter argues that he is entitled to official immunity on this claim. The remaining three claims are against Carter in his official capacity. One for enacting a policy or custom that was the moving force behind Germany's death. Another for failing to properly train his deputy sheriffs in proper pursuit techniques. A third for vicarious liability under state law. Carter contends that he is entitled to summary judgment on each of these claims because the plaintiff has failed to present evidence of an underlying deprivation of rights.

---

[5] The plaintiff argues that by joining the pursuit, Davis violated the Allen County written pursuit policy. The plaintiff also identifies 42 other instances in which Davis allegedly violated the policy. However, the fact that Davis's "actions may have violated [the County's] policies" goes to "whether he should be disciplined by the local police force" and not to whether he "violated the Constitution[.]" Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992). "A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983." Id.

4

### A. SECTION 1983 CLAIMS

To state a claim under § 1983, a plaintiff must establish "both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). Because "[s]ection 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced[,]" the Court's "first task . . . is to identify the specific constitutional . . . rights allegedly infringed." Meals v. City of Memphis, 493 F.3d 720, 727-28 (6th Cir. 2007) (citations omitted). The plaintiff identifies two constitutional rights allegedly infringed by Davis; Germany's right to be free from unreasonable seizures under the Fourth Amendment, see Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989), and Germany's right to be free from arbitrary government action that "shocks the conscience" under the Fourteenth Amendment Due Process clause, see County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).

#### 1. Fourteenth Amendment

The plaintiff argues that if, in striking Germany's motorcycle with his police cruiser, Davis intended to do so for some purpose other than to seize Germany, his claim is governed by the Fourteenth Amendment. Generally speaking, the Fourteenth Amendment prohibits "executive abuse of power . . . which shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); see also Rochin v. California, 342 U.S. 165, 172-73 (1952) (finding that police conduct shocks the conscience where it violates the "decencies of civilized conduct."). The plaintiff's claim fails, however, because "the more generalized notion of 'substantive due process'" must give way when the Constitution "provides an explicit textual source of constitutional protection . . . ."

5

Graham v. Connor, 490 U.S. 386, 395 (1989). That is, the Fourth Amendment's protection against unreasonable seizures governs "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." Id. Here, the plaintiff's Fourteenth Amendment claims are more properly analyzed under the Fourth Amendment's objective reasonableness standard.

Although the plaintiff contends that a seizure does not occur, and therefore the Fourth Amendment is inapplicable, if Davis intentionally struck Germany's motorcycle for some motive other than to seize him, the Court cannot agree. A "seizure" triggering the protections of the Fourth Amendment occurs "when there is a governmental termination of freedom of movement *through means intentionally applied.*" Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original); Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) (A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ."). Assuming for these purposes only that Davis intentionally struck Germany's motorcycle causing him to be killed,[6] such action constitutes a seizure under the Fourth Amendment. Davis's underlying motive is irrelevant. The plaintiff would have the Court "shift[] the issue from the intent of [Davis] as objectively manifested to the motive of [Davis] for taking the intentional action to stop the car . . . ." Brendlin v. California, 551 U.S. 249, 260 (2007). However, the Supreme Court "ha[s] repeatedly rejected attempts to introduce this kind of subjectivity into Fourth Amendment analysis." Id.; Cf. Scott v. Harris, 550 U.S. 372, 384 n.10 (2007) ("a seizure occurs whenever the police are responsible for the termination of a person's movement, *regardless of the reason for the*

---

[6] This is precisely what the plaintiff argues happened in both his Fourth and Fourteenth Amendment claims. The only distinction the plaintiff makes between these two claims is Davis's underlying motive for intentionally striking Germany's motorcycle.

6

*termination*.") (emphasis added) (internal quotation and markings omitted). Instead, the Court must only focus on the three-part test articulated by the Supreme Court in Brower; for a particular action to constitute a seizure under the Fourth Amendment the action must be "a (1) governmental (2) termination of freedom of movement (3) through means intentionally applied." Keller v. Frink, 745 F. Supp. 1428, 1432 (S.D. Ind. 1990). The only question of intent is whether the police conduct "demonstrated an *objective intent* to stop [the vehicle]." Id. (emphasis added). Under either set of facts articulated by the plaintiff, her claims are governed by the Fourth Amendment and will be so analyzed.

### 2. Fourth Amendment/Qualified Immunity

Davis contends that he is entitled to qualified immunity on the plaintiffs' Fourth Amendment claim asserted against him in his individual capacity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. ----, 129 S. Ct. 808, 815 (2009) (quotation omitted). Davis argues that qualified immunity is applicable because (1) "Deputy Davis did not intentionally strike Germany's motorcycle with his police cruiser . . ." and (2) "Plaintiff has presented absolutely no evidence that Deputy Davis' actions were objectively unreasonable." (Defs.' Mem. Supp. Mot. Summ. J. at 14, 17.)

#### *a. Evidence of Intent*

To establish a Fourth Amendment excessive force claim, the plaintiff must first prove that he was seized. As previously noted, a seizure is (1) a governmental (2) termination of freedom of movement (3) through means intentionally applied. Davis contends that he is entitled to qualified

7

immunity because the plaintiff has presented no evidence to establish the third element–that he intentionally struck Germany's vehicle–and without such evidence, the plaintiff cannot prove that there was a seizure under the Fourth Amendment. In support of this argument, Davis relies upon his own deposition where he testified that he unintentionally struck Germany's motorcycle after Germany lost control of the vehicle and turned left into the path of his cruiser. However, as previously discussed, supra n.4, the plaintiff has established a genuine issue of fact regarding the element of intent. The jury need not rely only upon Davis's version of events even though he is the only witness to the accident. The plaintiff can certainly attempt to circumstantially prove Davis's intent based upon the physical evidence at the scene of the accident. See Proffitt v. Anacomp, Inc., 747 F. Supp. 421, 427 (S.D. Ohio 1990) ("Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.") (quotation omitted).

### b. Reasonableness of Seizure

Although the plaintiff has presented sufficient evidence of a seizure, a "'[s]eizure alone is not enough for § 1983 liability[.]" Brower, 489 U.S. at 599. Instead, "the seizure must [also] be 'unreasonable.'" Id. This presents a much closer question. To determine the reasonableness of a seizure, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985) (quotation omitted). "[R]easonableness depends on not only when a seizure is made, but also how it is carried out." Id. (citation omitted). Based on these principles, the Supreme Court in Garner held that "an officer may not always [seize

a suspect] by killing him." Id. at 9. It is "constitutionally unreasonable" to use "deadly force to prevent the escape of all felony suspects, whatever the circumstances[.]" Id. at 11. In Garner, where the police shot and killed a fleeing burglary suspect, the Supreme Court found unconstitutional a Tennessee statute insofar as it "authorize[d] the use of deadly force" against an "unarmed, nondangerous suspect." Id. The Supreme Court noted, however, that the statute was not unconstitutional on its face because deadly force to seize a suspect may be warranted under certain circumstances:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Id. at 11-12.

Garner, however, "did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" Scott v. Harris, 550 U.S. 372, 382 (2007). While the use of force to seize a suspect in a manner that is nearly certain to cause death, such as shooting a suspect in the back of the head, may be unreasonable as applied to a "young, slight, and unarmed" burglary suspect fleeing on foot, Garner, 471 U.S. 11, the use of force only "likely" to cause serious injury or death to seize one who poses an "extreme danger to human life" in a high-speed police pursuit may be reasonable, Scott, 550 U.S. at 382-83. "Scott strongly suggests that the reasonableness balancing must take into account that there is a spectrum of 'deadly force,' and that just because a situation justifies ramming does not mean it will justify shooting a suspect in the head." Cordova v. Aragon, --- F.3d ----, 2009 U.S. App. LEXIS 13043, at *12 (10th Cir. June 17,

9

2009). Under this standard, "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Scott, 550 U.S. at 385-86; but see Lytle v. Bexar County, 560 F.3d 404, 414 (5th Cir. 2009) ("the [Supreme] Court's decision in Scott did not declare open season on suspects fleeing in motor vehicles."). Even under Scott, "the test of reasonableness requires careful attention to the facts and circumstances of each particular case." Sulfridge v. Huff, 313 F. App'x 820, 824 (6th Cir. 2009) (quotation omitted). Therefore, the courts in each case "must still slosh [their] way through the factbound morass of 'reasonableness.'" Scott, 550 U.S. at 383.

In determining whether Davis used excessive force against Germany, "the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. A proper application of this standard "'requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight . . . .'" Scott v. Clay County, 205 F.3d 867, 866-67 (6th Cir. 2000) (quoting Graham, 490 U.S. at 396-97) (emphasis removed). At times, officers are required to make split-second judgments. Under such circumstances,

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

Id. at 867 (internal markings removed). Furthermore, "[a]n officer's evil intentions will not make

10

a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham, 496 U.S. at 397.

When the facts of the case are viewed in the light most favorable to the plaintiff, the Court finds that there is a genuine issue of material fact as to whether Davis's actions were objectively reasonable. Davis argues that the facts of this case are akin to Scott where the Supreme Court authorized the use of force that is likely to cause serious injury or death if the fleeing suspect poses a danger to the lives of innocent bystanders. The Court is not persuaded. First, in Scott, the record contained a videotape of the high-speed pursuit which "clearly contradict[ed]" the plaintiff's version of events. 550 U.S. at 378. And what the Court saw on that videotape, "closely resemble[d] a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." Id. at 380. Here, there is no such evidence to clearly contradict the plaintiff's version of events.

Furthermore, the Court "must consider the risk of bodily harm that [Davis's] actions posed to [Germany] in light of the threat to the public that [Davis] was trying to eliminate." Id. at 383; see also Cordova v. Aragon, --- F.3d ----, 2009 U.S. App. LEXIS 13043 (10th Cir. June 17, 2009) (in light of Scott, the court required the risk of harm to bystanders and officers be more imminent where the action taken by police to seize the suspect was *nearly certain* to cause death); Lytle v. Bexar County, 560 F.3d 404 (5th Cir. 2009) (same). With regard to the risk to the public present in the Scott chase, the Court noted that "it [was] clear from the videotape that [the fleeing suspect] posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." Id. at 384. With regard to the risk

11

present in striking the suspect's car, the Court in Scott stated that "[i]t is equally clear that [the officer's] actions posed a high likelihood of serious injury or death to [the suspect]–though not the near *certainty* of death posed by, say, shooting a fleeing felon in the back of the head, or pulling alongside a fleeing motorist's car and shooting at the motorist." Id. (citations omitted) (emphasis in original).

Here, there is a dispute as to the risk posed to these officers and bystanders. Under the plaintiff's version of events, Germany may have posed some risk to the officers and the public–he maneuvered around Davis's cruiser early in the chase and ran a red light a short time later.[7] But unlike Scott, here, there were no bystanders nearby that were at risk of Germany's reckless conduct under the plaintiff's version of events. On the other hand, the risk posed to Germany pursuant to Davis's actions, if intentional, were incredibly greater than those to the fleeing suspect in Scott. There, the suspect was fleeing in a car, whereas here, Germany was fleeing on a motorcycle. One court has noted that "the greater likelihood of death or great bodily harm resulting from a collision with a motorcycle" makes police chases with motorcycles more like the police shooting at issue in Garner and less like the typical high speed pursuit with a car. Donovan v. City of Milwaukee, 17 F.3d 944, 949-50 (7th Cir. 1994). Ultimately, the Court concludes that there is a genuine issue of material fact regarding whether the lives of the police and innocent bystanders were sufficiently threatened so as to justify the type of force inflicted by Davis and that the issue of whether Davis's

---

[7] As the standard for excessive force claims is objective reasonableness, the Court does not consider that Germany was intoxicated or driving on a suspended license at the time of the chase. Although the defendants now argue that these facts should be considered, the Court rejects this contention. The test is whether the actions of the officers were objectively reasonable "in light of the facts and circumstances *then known to him*." United States v. Ferguson, 8 F.3d 385, 388 (6th Cir. 1993) (emphasis added). Davis does not contend that, at the time of the chase, he suspected that Germany was driving under the influence or on a suspended license.

12

actions were reasonable should be left to the jury.

For purposes of qualified immunity, the Court must also determine whether this right to be free from unreasonable seizures was clearly established at the time of pursuit. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted). In Smith v. Cupp, the Sixth Circuit held "that a suspect fleeing in a car that has never posed a danger to anyone has the clearly established right not to be seized with deadly force." 430 F.3d 766, 777 (6th Cir. 2005). Pursuant to Cupp, the Court finds that the right that Davis is alleged to have violated was clearly established at the time he pursued Germany. The Court also finds that the plaintiff has offered sufficient evidence to indicate that Davis's actions were objectively unreasonable in light of this clearly established constitutional right. For these reasons, summary judgment in favor of Davis on qualified immunity grounds is improper.

### 3. Official Capacity Claims

The defendants also argue that the remaining § 1983 claims against Carter is his official capacity should be dismissed because the plaintiff has failed to present an underlying § 1983 claim against Davis. However, having concluded that there is a genuine issue of material fact with regard to the plaintiff's claim against Davis, the Court will also deny Carter's motion for summary judgment.

### B. STATE LAW CLAIMS

The plaintiff has also asserted three state law claims against the defendant. One against Davis in his individual capacity for negligence, a claim to hold Carter in his official capacity vicariously liable for Davis's negligence, and a claim against Cater in his individual capacity for his

own negligence in enforcing Allen County's written pursuit policy. The defendants contend that they are immune under Kentucky law.

### 1. Official Immunity

*a. Deputy Davis*

Deputy Davis contends that if his actions in striking Germany's motorcycle were negligent, then such actions were discretionary in nature, and that he is therefore entitled to official immunity under Kentucky law pursuant to Haugh v. City of Louisville, 242 S.W.3d 683 (Ky. Ct. App. 2006) and Sowell v. Clark, No. 5:07-CV-101-R, 2009 WL 304405 (W.D. Ky. Feb. 6, 2009). Conversely, the plaintiff argues that safe emergency driving is a ministerial function and that Davis is therefore not entitled to qualified immunity pursuant to Jones v. Lathram, 150 S.W.3d 50 (Ky. 2004).[8]

In Haugh, the plaintiff argued that the commanding officers of a SWAT team were negligent in ordering their team to storm a residence without first taking into account the paranoid schizophrenia of the suspect in the residence. Haugh, 242 S.W.3d at 685. The Kentucky Court of Appeals noted that, "[t]o the extent the estate is arguing that the commanding officers in this case made an improper decision to storm [the suspect's] residence, . . . the law affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them from liability for good faith judgment calls made in a legally uncertain environment." Id. at 686 (quotation and internal markings omitted). The Court finds that Haugh is applicable to the extent the plaintiff seeks to impose liability against Davis for his negligence in initiating or continuing the pursuit of Germany. Just as the decision to storm the suspect's house in Haugh was discretionary,

---

[8] Under Kentucky law, public officials, including police officers, are cloaked with official immunity for the negligent performance of discretionary acts or functions. Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2001).

14

so to was Davis's decision to initiate or continue the pursuit.

However, Davis's driving during the pursuit is controlled by Jones. In Jones, a State Trooper was responding to an emergency call with his lights and sirens engaged when he negligently crashed into another vehicle at a blind intersection killing the driver. 150 S.W.3d at 51. The trooper argued that emergency driving is a discretionary act because it requires the officer to constantly make reactive decisions based on his or her assessment of roadway danger. Id. at 53. The Kentucky Supreme Court disagreed and held that "the act of safely driving a police cruiser, even in an emergency, is not an act that typically requires any deliberation or the exercise of judgment. Rather, driving a police cruiser requires reactive decisions based on duty, training, and overall consideration of public safety." Id. Jones is on point and applicable here.[9] As Davis in his deposition recognized, pursuing a suspect in a police chase is emergency driving. Therefore, to the extent the plaintiff seeks to impose liability against Davis for his negligence in the unsafe operation of his vehicle during the pursuit, Davis is not entitled to official immunity.[10]

---

[9] Davis argues that Sowell v. Clark, No. 5:07-CV-101-R, 2009 WL 304405 (W.D. Ky. Feb. 6, 2009) is more on point and establishes that Davis's actions were ministerial. The Court disagrees. Here, Davis was engaged in emergency driving in pursuing Germany. In Sowell, however, a police officer, who happened to be in his police cruiser when a suspect came at him with what appeared to be a shotgun, had to make a judgment call as to how to respond. The question that confronted the officer in Sowell was not whether to drive in a safe manner, but how best to respond to a suspect wielding a weapon. The decision of that officer was more like Davis's decision to initiate the pursuit, and less like operating the vehicle in a negligent manner during the pursuit.

[10] Although not addressed by the parties, the Court questions whether a pursuing police officer owes a duty of care to fleeing suspects. To be sure, under the Court's analysis of official immunity, a pursuing police officer would owe a duty of care to *innocent* third parties on the roadway. A pursuing officer would not be entitled to official immunity for his negligent driving under those circumstances. However, courts from other jurisdictions that have addressed the question, have found that police officers do not owe such a duty to fleeing suspects. See, e.g., Lindstrom v. City of Corry, 763 A.2d 394 (Pa. 2000) (no duty of care to fleeing driver); Jackson v. Oliver, 514 N.W.2d 195 (Mich Ct. App. 1994) (same); Bryant v. Beary, 766 So. 2d 1157 (Fla. Dist.

*b. Sheriff Carter*

The plaintiff also seeks to impose liability on Carter for his negligent failure to enforce the County's written pursuit policy. According to the plaintiff, if he had done so, it would have been improper for Davis to join the pursuit. Carter argues that his actions, like those of Davis, are discretionary in nature and therefore entitled to official immunity. The plaintiff contends that although the creation of a policy is discretionary and subject to official immunity, the enforcement of such a policy is ministerial. The plaintiff argues that since Carter created a policy, claims related to his failure to enforce the policy are not subject to official immunity.

It is true that under Kentucky law, the "[p]romulgation of rules is a discretionary function[,]" and the "enforcement of those rules is a ministerial function." Williams v. Ky. Dept. of Educ., 113 S.W.3d 145, 150 (Ky. 2003) (citation omitted). It also true that Carter enacted a policy for Allen County that may have been violated several times during Carter's tenure, including during the pursuit of Germany. However, the policy charges those officers involved in the pursuit and those supervising the pursuit with the enforcement of the policy. Therefore, only to the extent Carter is performing one of those functions would he be under a duty to comply with the policy's directives. Cf. id. at 150-51 (the teachers that are required by statute to supervise students are under a ministerial duty to do so); Yanero, 65 S.W.3d 510 (the baseball coaches that are required by a policy to ensure that athletes wear a helmet during batting practice are under a ministerial duty to do so). Here, the plaintiff does not contend that Carter was involved in the pursuit of Germany. Nor does the plaintiff point to any policy that required Carter to supervise the enforcement of the pursuit

---

Ct. App. 2000) (same); 60A C.J.S. Motor Vehicles § 763 ("A police officer owes no common law duty of care to a fleeing driver.") (citations omitted).

16

policy in any particular manner. Under such circumstances, the manner in which he supervises the pursuit policy is discretionary in nature. Cf. Rowan County v. Sloas, 201 S.W.3d 469, 480-81 (Ky. 2006) (supervision and training of staff and prisoners was a discretionary act or function). Carter is therefore entitled to official immunity for the plaintiff's claim for negligent enforcement of the written pursuit policy.

### 2. Vicarious Liability

The plaintiff's final claim seeks to hold Carter in his official capacity vicariously liable for the negligent acts of Davis. KRS 70.040 provides that "[t]he sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section." Although at common law, a sheriff in his official capacity would be absolutely immune from this type of vicarious liability, see Jones v. Cross, 260 S.W.3d 343, 345 (Ky. 2008), this statute acts as "a waiver of the sheriff's official immunity . . . for the tortious acts or omissions of his deputies[,]" id. at 346. Having determined that the negligence claim against Davis may proceed to trial, summary judgment as to this vicarious liability claim is not appropriate.

### IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion by the defendants, Danny Davis and Sam Carter, for summary judgment [DN 12] is **GRANTED in part** and **DENIED in part**. It is granted as to the plaintiff's state law negligence claim against Carter in his individual capacity. It is denied in all other respects.

cc:     Counsel of Record